IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAIL S., in her individual capacity, | ) | Civil Action No.  2:20-cv-1353 |
| and as parent and legal guardian | ) | |
| of Minor Plaintiffs, JO. S. and JE. S., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BUTLER WESLEYAN ACADEMY, | ) | |
| BUTLER WESLEYAN METHODIST | ) | |
| CHURCH, ALLEGHENY WESLEYAN | ) | |
| METHODIST CONNECTION, | ) | |
| PAUL FISH, TEDDY ZEIGLER, | ) | |
| SALLY ZEIGLER, DENNIS J. BALLOCK,) | | |
| DAVE PATTERSON, CURT FIELD, | ) | |
| KIMBERLY FISH, and | ) | |
| JOHN/JANE DOE(S) | ) | |
| | ) | |
| Defendants. | ) | Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiffs, GAIL S., JO. S. and JE. S. by and through their attorneys,

LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A.

TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby file this

Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1.       This is an action to redress the deprivation by the Defendants of the Plaintiffs' rights, and

in particular, the right to be free from racial discrimination, a racially hostile environment and

pervasive racial harassment in their education.  This action is brought against the Defendants for

violating the Plaintiffs' rights under Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

2.       Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3). Supplemental jurisdiction

over Plaintiff's state law claims is also proper pursuant to 28 U.S.C.A. § 1367.

3.      Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

PARTIES

4.      Plaintiff, Gail S., is an adult individual who resides in Butler County, Pennsylvania. Plaintiff Gail S. is the parent and natural guardian of minor Plaintiffs Jo. S. and Je. S.

5.      Minor Plaintiffs Jo. S. and Je. S. are multi-racial, have both East Indian and Jewish ancestry, and are under the primary care, physical custody and control of Plaintiff Gail S.

6.      At all times relevant hereto, minor Plaintiffs Jo. S. and Je. S. were students at Defendant Butler Wesleyan Academy.

7.      Defendant, Butler Wesleyan Academy ("Academy"), is a private, religious educational institution, operated as a ministry of Defendant Butler Wesleyan Methodist Church, which is a participating member of Defendant Allegheny Wesleyan Methodist Connection.  Defendant Academy's principal place of business is 590 Protzman Road, Butler, Pennsylvania 16002.

8.      At all times relevant hereto, Defendant Academy was acting by and through its agents, subsidiaries, officers, employees and assigns, acting within the full scope of their agency, office, employment and/or assignment.

9.      Defendant, Butler Wesleyan Methodist Church ("Church"), is a non-profit religious organization with a registered address of 133 Valley Street, Butler, Pennsylvania 16002 and a principal place of business located at 590 Protzman Road, Butler, Pennsylvania 16002.

10.     At all times relevant hereto, Defendant Academy was acting by and through its agents, subsidiaries, officers, employees and assigns, acting within the full scope of their agency, office, employment and/or assignment.

11.     At all times relevant hereto, Defendant Church was a participating member of Defendant Allegheny Wesleyan Methodist Connection.

12.     Defendant, Allegheny Wesleyan Methodist Connection ("Connection"), is a Methodist denomination that provides oversight, guidance and affiliation to its members, including: two (2) campgrounds, sixteen (16) Christian schools, including Defendant Academy, and many member churches of several states, including Defendant Church.  Defendant Connection's principal place of business is located at 2291 Depot Road, Salem, Ohio, 44460.

13.     At all times relevant hereto, Defendant Connection was acting by and through its agents, subsidiaries, officers, employees and assigns, acting within the full scope of their agency, office, employment and/or assignment.

14.     Defendant, Paul Fish ("P. Fish"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant P. Fish is a resident of Butler County, Pennsylvania.  Defendant P. Fish is the husband of Defendant Kimberly Fish.

15.     At all times relevant to this Complaint, Defendant P. Fish was the chairman of Defendant Academy's board, with final decision-making authority, and the pastor of Defendant Church, purporting to act within the full scope and authority of his positions.  Defendant P. Fish is sued individually and in his capacity as pastor of Defendant Church and chairman of Defendant Academy.

16.     Defendant, Teddy Zeigler ("T. Zeigler"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant T. Zeigler is a resident of Butler County, Pennsylvania.  Defendant T. Zeigler is the husband of Defendant Sally Zeigler.

17.     At all times relevant to this Complaint, Defendant T. Zeigler was the principal of Defendant Academy, an acting member of Defendant Academy's board with final decision-

making authority and a pastor with Defendant Connection, purporting to act within the full scope and authority of his positions.  Defendant T. Zeigler is sued individually and in his capacity as an acting board member of Defendant Academy and pastor of Defendant Connection.

18.     Defendant, Sally Zeigler ("S. Zeigler"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant S. Zeigler is a resident of Butler County, Pennsylvania.  Defendant S. Zeigler is the wife of Defendant T. Zeigler.

19.     At all times relevant to this Complaint, Defendant S. Zeigler was the administrator for Defendant Academy and an acting member of Defendant Academy's board with final decision-making authority, purporting to act within the full scope and authority of her positions. Defendant S. Zeigler is sued individually and in her capacity as an acting board member of Defendant Academy.

20.     Defendant, Dave Patterson ("Patterson"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant Patterson is a resident of Butler County, Pennsylvania.  At all times relevant to this Complaint, Defendant Patterson was an acting board member of Defendant Academy, with final decision-making authority.

21.     Defendant, Dennis Ballock ("Ballock"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant Ballock is a resident of Butler County, Pennsylvania.

22.     At all times relevant to this Complaint, Defendant Patterson was an acting board member of Defendant Academy, with final decision-making authority. Defendant Ballock is sued individually and in his capacity as an acting board member of Defendant Academy.

23.     Defendant, Curt Field ("Field"), is a Caucasian adult individual.  Plaintiffs believe, and therefore aver, that Defendant Patterson is a resident of Butler County, Pennsylvania.

24.     At all times relevant to this Complaint, Defendant Patterson was an acting board member of Defendant Academy, with final decision-making authority.  Defendant Patterson is sued individually and in his capacity as an acting board member of Defendant Academy.

25.     Defendant, Kimberly Fish ("K. Fish"), is an adult individual.  Plaintiffs believe, and therefore aver, that Defendant K. Fish is a resident of Butler County, Pennsylvania.  Defendant K. Fish is the wife of Defendant P. Fish.

26.     At all times relevant to this Complaint, Defendant K. Fish acted as an agent of Defendant Academy, with final decision-making authority, functioning as its treasurer.  Defendant K. Fish is sued individually and in her capacity as an agent of Defendant Academy.

27.     Defendants, John and/or Jane Doe(s), unknown in name and number, are members of Defendant Connection's leadership that provides oversight over Defendant Connection's members and/or with decision-making authority, including, but not limited to, Defendant Connection's president, vice president, secretary, treasurer, board or trustees, advisory board, board of administration and/or board of education.

## FACTUAL ALLEGATIONS

28.     At all times relevant hereto, Plaintiffs Jo. S. and Je. S. were honor roll students at Defendant Academy.

29.     Plaintiffs Jo. S. and Je. S. are multi-racial and have East Indian and Jewish ancestry.

30.     At all times relevant hereto, Plaintiffs Jo. S. and Je. S. were the only multiracial students at Defendant Academy, the only East Indian and/or Asian students at Defendant Academy, the only Jewish students at Defendant Academy, and the only students of any ethnic or racial minority at Defendant Academy.

31.     In order for the Plaintiffs Jo. S. and Je. S. to attend Defendant Academy, Plaintiffs were required to sign a contract, pay tuition and comply with Defendant Academy's School Handbook, establishing a contractual relationship between the Plaintiffs and Defendant Academy and its agents, including, but not limited to, Defendants T. Zeigler, S. Zeigler, P. Fish, K. Fish, Patterson, Ballock and Field.

32.     At all times relevant hereto, Defendant Academy was owned and operated by Defendant Church.

33.     At all times relevant hereto, Defendant Church was a participating member of Defendant Connection.

34.     Defendant Connection was responsible for providing oversight to its members, including Defendants Church and Academy.

35.     Throughout the 2017-2018 and 2018-2019 academic school years, teachers and students at Defendant Academy made ethnic and racially hostile statements, slurs and/or threats to and/or about Plaintiffs Jo. S. and Je. S. including, but not limited to, statements such as:

        a.   "What are you?"

        b.   "Are you Black?"

        c.   "We hate you."

        d.   "We hate that you're here."

        e.   "You don't belong here."

        f.   "You're black trash."

36.     Teachers, students and administrators at Defendant Academy, including Defendants T. Zeigler, S. Zeigler, P. Fish and/or K. Fish, on multiple occasions, also referred to Plaintiffs Jo. S.

and Je. S as "Black" in a way that was intended to embarrass, degrade and/or humiliate the

Plaintiffs for not being "White."

37.     Furthermore, teachers and students at Defendant Academy, including Defendants T.

Zeigler, S. Zeigler, P. Fish and/or K. Fish, conducted conversations about the ethnicity of the

Plaintiffs in a derogatory manner and repeated racial slurs to Plaintiffs Jo. S. and Je. S.

38.     Throughout the 2017-2018 and 2018-2019 academic school year, Plaintiff Gail S.

repeatedly complained to Defendants P. Fish and T. Zeigler about the racially hostile comments

made to Plaintiffs Jo. S. and Je. S., as more fully described hereinbefore above.

39.     Plaintiff Gail S. also raised concerns about the racially hostile comments with Defendant

Academy's board, including, but not limited to, Defendants T. Zeigler and P. Fish.  These

Defendants responded that the racially hostile comments, as more fully described hereinbefore

above, were harmless and that teachers and students at Defendant Academy were merely trying

to figure out "what [the Plaintiffs] were" if they were not "Black."

40.     Plaintiffs believe, and therefore aver, that Plaintiffs Jo. S. and Je. S. were treated less

favorably than Caucasian students at Defendant Academy based on their race and ethnicity.

41.     Caucasian students at Defendant Academy were not subjected to any harassment based

on race or ethnicity while attending Defendant Academy.

42.     Plaintiffs Jo. S. and Je. S. were subjected to racial harassment at Defendant Academy that

was so severe, pervasive and objectively offensive, and that so undermined and detracted from

their educational experience, that they were effectively denied equal access to education at

Defendant Academy.

43.     Plaintiffs Jo. S. and Je. S. were described by teachers at Defendant Academy as

"disrespectful" and/or "disobedient" despite the fact that Plaintiff Jo. S. and Je. S's conduct was

no different than and/or superior to the conduct of Caucasian students at Defendant Academy who were not described as such.

44.     Moreover, Plaintiffs Jo. S. and Je. S. were academically performing above their grade level in various subjects and above the level of their Caucasian classmates at Defendant Academy.

45.     In December of 2018, Plaintiffs complained of racially hostile comments that were made to Plaintiffs Jo. S. and Je. S. by the son and daughter of Defendants P. Fish and K Fish.

46.     Defendant P. Fish and K. Fish's son and daughter are Caucasian students at Defendant Academy.

47.     After the Plaintiffs reported the racially hostile comments made to them by Defendant P. Fish and K. Fish's son and daughter, Defendants T. Zeigler and S. Zeigler began to document and/or misrepresent the behavior of Plaintiffs Jo. S. and Je. S.

48.     Plaintiffs believe, and therefore aver, that Defendants T. Zeigler and S. Zeigler began to document and/or misrepresent the behavior of Plaintiffs Jo. S. and Je. S. because of their race and/or in retaliation for Plaintiffs' complaints about racially hostile comments made by Defendant K. Fish and P. Fish's son and daughter.

49.     The documentation of Plaintiffs Jo. S. and Je. S.'s behavior included, but was not limited to, minor issues such as not playing with other children at recess and asking a question about the school's security cameras.

50.     This documentation of Plaintiffs Jo. S. and Je. S.'s behavior was not provided contemporaneously to the Plaintiffs.

51.     Plaintiffs believe, and therefore aver, that much of the above-described documentation of Plaintiffs Jo. S. and Je. S.'s behavior was created a significantly later in time than the alleged incidents.

52.     Plaintiffs believe, and therefore aver, that Caucasian students at Defendant Academy were not subjected to the documentation and/or misrepresentation of behavior to which Plaintiffs Jo. S. and Je. S were subjected.

53.     Prior to Plaintiffs' complaints in December of 2018, as more fully described hereinbefore above at Paragraph 45, Plaintiffs were not provided with any form of written warning about Plaintiffs Jo. S. and Je. S.'s behavior.

54.     On or about January 2, 2019, Plaintiff Gail S. complained to Defendant P. Fish and Defendant T. Zeigler that Plaintiffs Jo. S. and Je. S. were being treated differently because of their race and/or ethnicity and/or in retaliation for Plaintiffs' complaints of racially hostile comments, as more fully described hereinbefore above.

55.     On January 10, 2019, Plaintiff Gail S. emailed Defendant T. Zeigler a list of concerns stemming from her belief that Plaintiffs Jo. S. and Je. S. were being treated differently at Defendant Academy because of their race and/or in retaliation for the complaints made by the Plaintiffs about the racially hostile comments, as more fully described hereinbefore above.

56.     On that same day, Defendant Academy held a private board meeting where Defendants Ballock and Patterson were appointed to the board without any prior notice to the parents of Defendant Academy's students, including, but not limited to, Plaintiff Gail S.

57.     At that time, Defendant Academy's board members, including Defendant P. Fish, Defendant T. Zeigler, Defendant S. Zeigler, Defendant Ballock, Defendant Field and Defendant

Patterson, "indefinitely suspended" Plaintiff Jo. S. and Je. S. suddenly and without prior oral or written warning, a disciplinary action that was never contemplated under the School Handbook.

58.     Plaintiffs believe, and therefore aver, that Defendant Academy's board members, including Defendant P. Fish, Defendant T. Zeigler, Defendant S. Zeigler, Defendant Ballock, Defendant Field and Defendant Patterson, indefinitely suspended and/or expelled Plaintiff J. S. and Je. S. because of their race and/or ethnicity and/or in retaliation against Plaintiffs for their multiple reports of discrimination, as more fully described hereinbefore above.

59.     Notably, meeting minutes indicate that Defendant Academy's board, including Defendant P. Fish, Defendant T. Zeigler, Defendant S. Zeigler, Defendant Ballock, Defendant Field and Defendant Patterson, discussed the Plaintiffs' reports of discrimination, as more fully described hereinbefore above, before indefinitely suspending and/or expelling Plaintiffs Jo. S. and Je. S.

60.     Prior to the above-described suspension, Plaintiffs were not provided with any verbal or written notice explaining any alleged infraction(s) of Plaintiffs Jo. S. and/or Je. S. by any Defendant, nor were they provided with any outline of any corrective action to be taken for any alleged infraction(s), all in violation of the School Handbook which serves as the governing contract by which all parties agreed to be bound.

61.     To date, no Defendant has provided Plaintiffs with any explanation of any alleged infraction that would have caused Plaintiffs Jo. S. and Je. S.'s immediate and indefinite suspension and/or expulsion from Defendant Academy, despite Plaintiff Gail S.'s specific and repeated request for same.

62.     After receiving the specific and repeated requests from Gail S. for the infractions resulting in indefinite suspension and/or expulsion of the minor Plaintiffs, Defendants P. Fish

and T. Ziegler, unequivocally stated that they were "not comfortable" providing this requested

information to the Plaintiffs.

63.     Section 2.1 of the School Handbook, titled "Admissions Policy, states, in part: "The

Academy admits students of any race, color, nationality, and ethnic origin to all rights,

privileges, programs, and activities at the school.  It does not discriminate on the basis of race,

color, national, or ethnic origin in administration of its educational and admissions policies."

64.     Section 2.6 of the School Handbook, titled "Discipline," states, in full:

> Occasionally it becomes necessary to use stronger disciplinary measures than
> mere words of correction.  In such cases, a phone call and/or note of information
> will be directed to the parent explaining the infraction and corrective action taken.
>
> No student should need to be spoken to about a school rule more than once,
> especially those referring to Biblical principles, moral decency, Christian
> standards, or conduct and appearance as described in this handbook.  If a student
> maintains a spirit of disregard to authority, he/she is subject to suspension or
> dismissal from the school.  Suspensions may last from one to three days,
> depending on the severity of the infraction.  After suspension, the student may be
> brought before the board and teachers to determine if he/she will be permitted to
> remain at Butler Wesleyan Academy.  If the student displays an ongoing spirit of
> disobedience to authority, he/she leaves the Academy with no other choice than
> dismissal.

65.     Similarly situated Caucasian students at Defendant Academy, including, but not limited

to Defendants P. Fish and K. Fish's son and daughter, have never been "indefinitely suspended"

even though they have engaged in worse behavior than that which could be alleged against

Plaintiffs Jo. S. and Je. S.

66.     Similarly situated Caucasian students at Defendant Academy have likewise never been

disciplined for the type of conduct that could be alleged against Plaintiffs Jo. S. and Je. S.

67.     Plaintiffs Jo. S. and Je. S. were honor roll students at Defendant Academy who did not

violate any rules in the Student Handbook that would warrant discipline of any kind, let alone

indefinite suspension and/or expulsion.

68.     Plaintiffs believe, and therefore aver, that the above-described discrimination of Plaintiffs Jo. S. and Je. S. was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and/or oversee its members, including Defendants Church and Academy.

69.     As a direct and proximate result of the actions of the Defendants, and each of them, Plaintiffs Jo. S. and Je. S. were discriminated based on their race and ethnicity, retaliated against and denied equal access to educational experience, as more fully described hereinbefore above.

70.     Following Plaintiffs Jo S. and Je. S's indefinite suspension and eventual separation from Defendant Academy, Plaintiffs requested a refund of the unused portion of Plaintiffs Jo. S. and Je. S.'s tuition.

71.     Rather than provide Plaintiffs with a full refund of the unused funds, Defendant Academy, through its agents, including Defendants T. Zeigler, S. Zeigler, P. Fish, K. Fish, Patterson, Ballock and Field, decided to provide only a partial refund and directed Defendant K. Fish to keep the funds which should have rightfully been refunded to the Plaintiffs.

COUNT I:

PLAINTIFFS JO. S. and JE. S. v. ALL DEFENDANTS

VIOLATION OF PLAINTIFFS' RIGHTS UNDER
42 U.S.C. § 1981

RACE DISCRIMINATION

72.     Plaintiffs incorporate by reference Paragraphs 1 through 71 as though fully set forth at length herein.

73.     As more fully described hereinbefore above, Plaintiffs had a contractual relationship with Defendants which included the benefits of Plaintiffs Jo. S. and Je. S.'s education.

74.     Plaintiffs Jo. S. and Je. S. are multi-racial, having both East Indian and Jewish ancestry.

75.     As more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were subjected to a racially hostile environment based on their East Indian and Jewish descent and discriminated against by the Defendants.

76.     Defendants Church and Academy, through their agents, had actual knowledge of the discrimination and/or racially hostile environment.

77.     Defendant Church and Academy's agents, including, but not limited to, Defendants P. Fish, T. Zeigler, S. Zeigler and K. Fish, actively participated in the racially hostile environment on its property, as more fully described hereinbefore above.

78.     Plaintiffs believe, and therefore aver, that the above-described discrimination of Plaintiffs Jo. S. and Je. S. was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and/or oversee its members, including Defendants Church and Academy.

79.     As a direct and proximate result of the discriminatory actions of the Defendants, and each of them, as more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were unable to fully enjoy the benefits and privileges of the educational contract between Plaintiffs and Defendants.

80.     The actions of the Defendants as aforementioned were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiffs.

81.     As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

      a.     violation of the Plaintiffs' rights under Section 1 of the Civil Rights Act of 1866;

      b.     severe emotional distress;

c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s educational experience;

d.      economic damages related to any and all legal and/or other consequential costs; and

e.      such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFFS JO. S. and JE. S. v. ALL DEFENDANTS

VIOLATION OF PLAINTIFFS' RIGHTS UNDER
42 U.S.C. § 1981

HOSTILE EDUCATIONAL ENVIRONMENT

82.     Plaintiff incorporates by reference Paragraphs 1 through 81 as though fully set forth at length herein.

83.     As more fully described hereinbefore above, Plaintiffs had a contractual relationship with Defendants which included the benefits of Plaintiffs Jo. S. and Je. S.'s education.

84.     As more fully described hereinbefore above, Plaintiffs were subjected to a racially hostile educational environment at Defendant Academy.

14

85.     Plaintiffs were subjected to racial and ethnic harassment at Defendant Academy that was so severe, pervasive and objectively offensive, and that so undermined and detracted from their educational experience, that they were effectively denied equal access to education at Defendant Academy.

86.     Plaintiffs believe, and therefore aver, that the above-described racially hostile educational environment was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and/or oversee its members, including Defendants Church and Academy.

87.     The actions of the Defendants as aforementioned were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiffs.

88.     As a direct and proximate result of the discriminatory actions of the Defendants, and each of them, as more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were unable to fully enjoy the benefits and privileges of the educational contract between Plaintiffs and Defendants.

89.     As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

        a.      violation of the Plaintiffs' rights under Section 1 of the
                Civil Rights Act of 1866;

        b.      severe emotional distress;

        c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s
                educational experience;

        d.      economic damages related to any and all legal and/or other
                consequential costs; and

        e.      such other damages as may become apparent through the discovery
                process.

15

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

ALL PLAINTIFFS v. ALL DEFENDANTS

VIOLATION OF PLAINTIFFS' RIGHTS UNDER
42 U.S.C. § 1981

RETALIATION

90.     Plaintiffs incorporate by reference Paragraphs 1 through 89 as though fully set forth at length herein.

91.     As more fully described hereinbefore above, Plaintiffs had a contractual relationship with Defendants which included the benefits of Plaintiffs Jo. S. and Je. S.'s education.

92.     As more fully described hereinbefore above, Plaintiffs were subjected to retaliation based on Plaintiffs' multiple reports to Defendants of the hostile environment based on race and /or ethnicity at Defendant Academy.

93.     As more fully described hereinbefore above, Defendant's retaliatory conduct included, but was not limited to, the documentation and/or misrepresentation of Plaintiffs Jo. S. and Je. S.'s behavior, the indefinite suspension and/or expulsion of Plaintiffs Jo. S. and Je. S. and Defendant Academy's failure to properly refund the Plaintiffs.

94.     Plaintiffs believe, and therefore aver, that the above-described discrimination and retaliation against the Plaintiffs was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and/or oversee its members, including Defendants Church and Academy.

95.     As a direct and proximate result of the discriminatory and retaliatory actions of the Defendants, and each of them, as more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were unable to fully enjoy the benefits and privileges of the educational contract between Plaintiffs and Defendants.

96.     The actions of the Defendants as aforementioned were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiffs.

97.     As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

    a.      violation of the Plaintiffs' rights under Section 1 of the
            Civil Rights Act of 1866;

    b.      severe emotional distress;

    c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s
            educational experience;

    d.      economic damages related to any and all legal and/or other
            consequential costs; and

    e.      such other damages as may become apparent through the discovery
            process.

    WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual

Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFFS JO. S. and JE. S. v. ALL DEFENDANTS

VIOLATION OF PLAINTIFFS' RIGHTS UNDER<br>42 U.S.C. § 1981

DENIAL OF EQUAL EDUCATIONAL OPPORTUNITY

98.     Plaintiff incorporates by reference Paragraphs 1 through 97 as though fully set forth at length herein.

99.     As more fully described hereinbefore above, Plaintiffs had a contractual relationship with Defendants which included the benefits of Plaintiffs Jo. S. and Je. S.'s education.

100.    As more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were subjected to discrimination, a hostile educational environment based on race and/or ethnicity and retaliation at Defendant Academy.

101.    Plaintiffs were subjected to racial harassment at Defendant Academy that was so severe, pervasive and objectively offensive, and that so undermined and detracted from their educational experience, that they were effectively denied equal access to education at Defendant Academy.

102.    Plaintiffs believe, and therefore aver, that the above-described discrimination and retaliation against the Plaintiffs was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and oversee its members, including Defendants Church and Academy.

103.    As a direct and proximate result of the discriminatory and retaliatory actions of the Defendants, and each of them, as more fully described hereinbefore above, Plaintiffs Jo. S. and

18

Je. S. were unable to fully enjoy the benefits and privileges of the educational contract between Plaintiffs and Defendants.

104.    The actions of the Defendants as aforementioned were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiffs.

105.    As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

        a.      violation of the Plaintiffs' rights under Section 1 of the Civil Rights Act of 1866;

        b.      severe emotional distress;

        c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s educational experience;

        d.      economic damages related to any and all legal and/or other consequential costs; and

        e.      such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFFS JO. S. and JE. S. v. DEFENDANT CONNECTION

19

## VIOLATION OF PLAINTIFFS' RIGHTS UNDER
42 U.S.C. § 1981

## FAILURE TO ADEQUATELY TRAIN, SUPERVISE AND OVERSEE

106.    Plaintiff incorporates by reference Paragraphs 1 through 105 as though fully set forth at length herein.

107.    Defendant Connection is responsible for providing oversight to its members, including Defendants Church and Academy.

108.    As more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S were subjected to discrimination, a hostile educational environment based on race and/or ethnicity and retaliation at Defendant Academy.

109.    Plaintiffs Jo. S. and Je. S. were subjected to racial and ethnic harassment at Defendant Academy that was so severe, pervasive and objectively offensive, and that so undermined and detracted from their educational experience, that they were effectively denied equal access to education at Defendant Academy.

110.    As a direct and proximate result of the discriminatory and retaliatory actions of the Defendants, and each of them, as more fully described hereinbefore above, Plaintiffs Jo. S. and Je. S. were unable to fully enjoy the benefits and privileges of the educational contract between Plaintiffs and Defendants.

111.    Plaintiffs believe, and therefore aver, that the above-described discrimination and retaliation against the Plaintiffs was a direct and proximate result of Defendant Connection, and/or Defendant Doe(s), failure to properly train, supervise and/or oversee its members, including Defendants Church and Academy.

112.    As a direct result of the actions of the Defendant Connection, Plaintiffs suffered the following injuries and damages:

      a.      violation of the Plaintiffs' rights under Section 1 of the Civil Rights Act of 1866;

      b.      severe emotional distress;

      c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s educational experience;

      d.      economic damages related to any and all legal and/or other consequential costs; and

      e.      such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendant Connection, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

ALL PLAINTIFFS v. DEFENDANTS ACADEMY, T. ZEIGLER, S. ZEIGLER, P. FISH, K. FISH, PATTERSON, BALLOCK AND FIELD.

VIOLATION OF PLAINTIFFS'
PENNSYLVANIA COMMON LAW RIGHTS

BREACH OF CONTRACT

113.    Plaintiff incorporates by reference Paragraphs 1 through 112 as though fully set forth at length herein.

114.    A contract for education existed among the Plaintiffs and Defendant Academy, including

through Defendant Academy's Student Handbook, which Defendant Academy, through its

agents, including Defendants T. Zeigler, S. Zeigler, P. Fish, K. Fish, Patterson, Ballock and

Field, breached by discriminating against Plaintiffs Jo. S. and Je. S. because of their race and by

failing to follow the procedures for discipline that are set forth in the Student Handbook.

115.    As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered

the following injuries and damages:

        a.      violation of the Plaintiffs' rights under Pennsylvania
                  Common Law;

        b.      severe emotional distress;

        c.      extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s
                  educational experience;

        d.      economic damages related to any and all legal and/or other
                  consequential costs; and

        e.      such other damages as may become apparent through the discovery
                  process.

WHEREFORE, Plaintiffs demand compensatory general damages against the

Defendants, and each of them, in the amount proven at trial; compensatory special damages

including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre-

and post-judgment interest as permitted by law; and such other relief, including injunctive and/or

declaratory relief, as this Court may deem proper.

                                        JURY TRIAL DEMANDED

COUNT VI:

ALL PLAINTIFFS v. DEFENDANTS ACADEMY, T. ZEIGLER, S. ZEIGLER, P. FISH, K. FISH, PATTERSON, BALLOCK AND FIELD.

VIOLATION OF PLAINTIFFS'
PENNSYLVANIA COMMON LAW RIGHTS

UNJUST ENRICHMENT

116.    Plaintiff incorporates by reference Paragraphs 1 through 115 as though fully set forth at

length herein.

117.    Following Plaintiffs Jo S. and Je. S's indefinite suspension and eventual separation from

Defendant Academy, Plaintiffs requested a refund of the unused portion of Plaintiffs Jo. S. and

Je. S.'s tuition.

118.    Rather than provide Plaintiffs with a full refund of the unused funds, Defendant

Academy, through its agents, including Defendants T. Zeigler, S. Zeigler, P. Fish, K. Fish,

Patterson, Ballock and Field, decided to provide only a partial refund and directed Defendant K.

Fish to keep the funds which should have rightfully been refunded to the Plaintiffs.

119.    This misappropriation and theft of Plaintiffs' prepaid tuition results in the Defendants'

unjust enrichment.

120.    As a direct result of the actions of the Defendants, and each of them, Plaintiffs suffered

the following injuries and damages:

a.    violation of the Plaintiffs' rights under Pennsylvania
Common Law;

b.    severe emotional distress;

c.    extreme and severe damage to Plaintiffs Jo. S. and Je. S.'s
educational experience;

d.    economic damages related to any and all legal and/or other
consequential costs; and

23

e.      such other damages as may become apparent through the discovery
        process.

WHEREFORE, Plaintiffs demand compensatory general damages against the

Defendants, and each of them, in the amount proven at trial; compensatory special damages

including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre-

and post-judgment interest as permitted by law; and such other relief, including injunctive and/or

declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED


Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiffs*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: September 9, 2020